PENNSYLVANIA STEEL CO. et al. v. NEW YORK CITY RY. CO. et al.

(Circuit Court, S. D. New York. July 23, 1908.)

See, also, 161 Fed. 784, 786, 787.

═══════════

PENNSYLVANIA STEEL CO. et al. v. NEW YORK CITY RY. CO. MORTON TRUST CO. v. METROPOLITAN ST. RY. CO. GUARANTY TRUST CO. v. SAME.

(Circuit Court, S. D. New York. June 29, 1908.)

STREET RAILROADS (§ 58*)—RECEIVERS—ADMINISTRATION OF PROPERTY—ASSUMPTION OF LEASE.

Receivers for a street railroad system directed to cancel a lease for a constituent line operated thereunder at a loss.

[Ed. Note.—For other cases, see Street Railroads, Dec. Dig. § 58.*]

In Equity. On petition of receivers for instructions.
See, also, 161 Fed. 784, 786, 787.

Byrne & Cutcheon, for Pennsylvania Steel Co.
Masten & Nichols, for receivers of New York City Ry. Co.
Bronson Winthrop, for Morton Trust Co.
Masten & Nichols, for receivers of Metropolitan St. Ry.
Davies, Stone & Auerbach, for Guaranty Trust Co.

LACOMBE, Circuit Judge. The receivers, upon due notice to all parties, ask for instructions as to a trackage agreement dated September 29, 1896, executed by the Twenty-Eighth & Twenty-Ninth Streets Company of the first part and the Metropolitan Street Railway Company of the second part. By said agreement there was granted to the Metropolitan Company the right and privilege to use the railroad tracks of the Twenty-Eighth & Twenty-Ninth Streets Company, to operate cars in common, and to collect all fares of passengers riding in such cars. The Metropolitan Company agreed to run a sufficient number of cars daily to accommodate the traffic; to pay the principal

of certain first mortgage bonds ($1,500,000), and to pay interest thereon ($75,000 per annum); also to pay all taxes, and to maintain the railroad in good condition and repair. The agreement was to continue during the corporate existence of the parties.

The situation presented is similar to that in the Case of the Belt Line, 165 Fed. 459, disposed of to-day. The gross earnings, including cash fares and advertising, for the year ending March 31, 1908, amounted to $146,536.70, the operating expenses and taxes to $143,-729.27; leaving a net income of $2,807.48 only, with which to pay the stipulated rental of $75,000. This involves an annual loss of over $70,-000 a year, a sum which might be much more usefully employed in improving conditions on other lines of the system. The further payment of the amount stipulated for in the agreement should be discontinued, and the receivers are instructed that they may cancel the agreement. From what appeared upon the hearing it would seem that the bondholders only exhibit any interest in the property, the stockholders having notified the mortgage trustee that they intend to take no action. About one-third of the bondholders appeared by counsel, and, there being no registry of their names, difficulty may be experienced in getting together a sufficient number to act for the whole body and supply the trustee with necessary funds. No payment under the agreement will come due before October 1st, and the receivers may at their discretion continue to operate the lines until that date as an accommodation to the bondholders, thus giving them ample time to arrange for taking over the operation, but it must be distinctly understood that in so doing the receivers are not to account for any pro rata part of the stipulated rent, nor for damages from accidents of operation.